tions for credit may have constituted a waiver, if the credit man was authorized to waive the tort; but this could not be proved under the general denial. It did not tend to disprove the conversion. It constituted matter in avoidance, which it was essential to allege affirmatively. The plaintiffs' cause of action became complete by the conversion. The defendant, in effect, seeks to show under a general denial, not that the cause of action did not accrue to the plaintiffs, but that after it accrued it was compromised or waived. I think the question falls on principle within the rule that the release of a cause of action or rescission of a contract must be specially pleaded. Horton v. Horton, 83 Hun, 213, 31 N. Y. Supp. 588; Chapin v. Pratt, 66 Hun, 628, 20 N. Y. Supp. 952.

It follows that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event. All concur, except PATTERSON, P. J., who dissents.

---

(122 App. Div. 572.)

### BRAUNER v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department. December 13, 1907.)

STREET RAILROADS—COLLISION WITH VEHICLE ON TRACK—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—SUBMISSION TO JURY.

In an action against a street railroad for death of plaintiff's decedent in a collision between a vehicle in which decedent was riding and defendant's car, evidence held sufficient to go to the jury on the questions of defendant's negligence and decedent's contributory negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Street Railroads, §§ 251–257.]

Ingraham, J., dissenting.

Appeal from Trial Term.

Action by Meier Brauner, as administrator, etc., against the Third Avenue Railroad Company. From a judgment dismissing his complaint and from an order denying his motion for new trial, plaintiff appeals. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Alex. B. Greenberg, for appellant.
Bayard H. Ames, for respondent.

LAUGHLIN, J. This is a statutory action to recover for the death of Israel Brauner, alleged to have been caused by the negligence of the defendant. It is alleged in the complaint, as amended, that on the 10th day of July, 1899, the decedent was lawfully driving a wagon drawn by two horses northerly along Third avenue, in the borough of Manhattan, N. Y., and, while between Ninety-Seventh and Ninety-Eighth streets, the wagon was struck by a south-bound car of the defendant, whose employés operated the same in a careless and negligent manner, precipitating the decedent to the ground, thereby causing his death.

The points presented by the appeal are with respect to the sufficiency of the evidence of freedom from contributory negligence and negligence to take the case to the jury. We are of opinion that both questions became questions of fact for the consideration of the jury. The plaintiff gave evidence tending to show that the decedent was a healthy, intelligent boy, 19 years of age, and was employed as salesman for the firm of Stern & Brauner, engaged in the pickle business; that he always went along with the driver; that on the day in question he started from his employer's place of business with one Grill as a helper, on a covered truck wagon load of pickles drawn by two heavy truck horses, and was driving at the time of the accident.

One Herman, a dry-goods merchant at No. 1766 Third avenue, which is next door south of Ninety-Eighth street on the westerly side, testified that he was standing on the sidewalk in front of the door of his store; that he observed the pickle wagon at Ninety-Seventh street coming northerly on the north-bound track, and then noticed a car behind and heard the gong, and observed that the driver of the wagon turned west onto the south-bound track while crossing Ninety-Seventh street; that at this time a double top ice wagon was standing on the east side of the avenue, backed up to the curb in front of the second store north of Ninety-Seventh street; that after the car passed, and about in the middle of the block, and when the wagon was between the westerly curb and westerly track, it commenced to turn to cross diagonally to the east side of the street; that he did not see any car approaching from the north until he heard it strike the wagon directly in front of his place of business; that he was looking at the wagon passing, and that, when the horses passed upon the south-bound track, the car was not on that block, but that he did not see the car until it struck the wagon; that by the collision the wagon was tipped over to the east side of the avenue; that the car first struck the left front wheel of the wagon and then the left hind wheel, the wagon being at the time in a diagonal position on the track, slanting towards the northeast, and that the wagon was nearly off the track when it was struck.

One Unger, who resided and kept store at No. 1758 Third avenue, which was the third door north of Ninety-Seventh street, on the west side, testified that he had just come out of his store and was standing in the middle of the street near the car track where an underground improvement was being made, which he was looking at; that he first noticed the wagon on the westerly side of the street when it commenced to turn toward the east to cross to that side, which he says was about opposite No. 1762 or 1764, which would be a little above the middle of the block, but later on he says, "It was about the middle of the block"; that he saw the south-bound car crossing Ninety-Eighth street; that at the time the horses, in crossing the avenue from west to east, reached the track, it was about in the middle of the block or opposite No. 1762, and "at that time, I say, the car was crossing Ninety-Eighth street. Next I was just watching on the street, and I heard some hollering, and I looked up and saw that the car had struck the wagon. The car went into the hind wheel, and turned over

the wagon. After the car struck the hind wheel of the wagon, the wagon fell over from the west side on the east side, to the east."

One Knobler, who conducted a store at No. 1763 Third avenue, which was the second door south of Ninety-Eighth street, on the east side, testified that he was standing in his store, looking out through the window, and was attracted by the decedent's helper hollering "Stop, stop!" that he looked out, and saw Grill standing up, holding up his hand, and shouting "Stop, stop!" and that he saw the car coming down on the west side—"it was coming near Ninety-Eighth street"—that it was a cable car; that he did not see the gripman doing anything at first, but that after the hollering, and when the car was about 15 feet from the wagon, or "maybe more," he saw the gripman endeavor to stop the car; that the car struck the hind wheel of the wagon, turning it over to the east side. On cross-examination this witness said that, when the horses first came on the south-bound track, he heard the shouting, and that "the car then was at Ninety-Eighth street, just coming from Ninety-Eighth street"; that at this time he saw the decedent urge the horses forward with the reins—"I saw that, but he didn't quite succeed, and the car hit him"—that the wagon was headed in the direction where "they delivered pickles there somewhere about Ninety-Eighth street"; that the car was running along at the regular rate of speed when he first saw it and during all the time he saw it; that "the first time that I looked at the motorman he was trying to stop the car, putting his hand on the brake." But on redirect examination he again testified that the car was within 15 or 20 feet of the wagon before the motorman attempted to stop. At this point the record does not show that the plaintiff rested, but it contains a formal motion for a dismissal of the complaint, and shows that it was granted, and that an exception thereto was taken. It then appears that the attorney for the plaintiff requested the court to permit him to call another witness, which the court declined. Then counsel for plaintiff duly excepted to the ruling of the court, and moved for a new trial which motion was denied, and he excepted.

Perhaps it should be assumed that the plaintiff rested or acquiesced in the motion for a dismissal of the complaint upon the theory that he had rested, inasmuch as it does not appear that there was any objection upon the ground to the motion being made. Even so, however, assuming, as we must, that the record correctly shows the proceedings, plaintiff should have been permitted to call his other witness. It appeared that Grill, who was on the wagon with the decedent, was in court, and it is to be inferred that he is the witness the plaintiff desired to call. It is manifest that his evidence would be most material. Assuming, however, that the plaintiff formally rested his case upon the evidence disclosed by the record, the material parts of which are herein summarized, sufficient was shown to take the case to the jury. The easterly carriageway having been obstructed, the driver had a right to turn to the westerly side of the street, and, after the car passed, he not only had a right, but it was his duty, to return to the proper side of the street with reasonable dispatch.

The evidence would have warranted a finding that the horses and the front part of the wagon had cleared the track, and that the car collided with the left hind wheel. The accident occurred in broad daylight. In these circumstances it might be inferred that the motorman saw the wagon crossing the track in time to avoid the collision; and the evidence indicates that he would have discovered it in time to slow down or stop the car until the wagon cleared the track if he had exercised proper care. According to the evidence, the car was 100 feet or more away when the horses reached or entered upon the track; and therefore it cannot be said as matter of law that the driver was guilty of negligence in proceeding to cross.

It follows that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event. All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. (dissenting). I dissent. I do not think the evidence was sufficient to justify a finding that the defendant was negligent, or that the plaintiff was free from contributory negligence.